IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUNE K.[1], <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 6:19-cv-1548-SI <br><br> **OPINION AND ORDER** |

Brent Wells and Katherine L. Eitenmiller, HARDER, WELLS, BARON & MANNING PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

June K. (Plaintiff) brings this action pursuant to § 405(g) of the Social Security Act (the

Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act and Supplemental Security Income (SSI) under Title XVI of the Act. For the reasons below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

On July 19, 2016, Plaintiff applied for both DIB and SSI alleging that her disability began on April 1, 2014. AR 15. Plaintiff was born on March 25, 1988 and was 26 years old as of the alleged disability onset date. AR 22. The Commissioner first denied both of Plaintiff's claims on November 28, 2016. AR 105, 110. On February 16, 2017, the Commissioner denied Plaintiff's claims on reconsideration. AR 116, 119. Plaintiff requested and testified at a hearing before an Administrative Law Judge (ALJ) on April 12, 2017. AR 126. At the hearing, Plaintiff amended her alleged onset date to June 13, 2014. AR 15. The ALJ concluded that Plaintiff was not disabled and issued a written decision denying Plaintiff's application. AR 15. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 29, 2019. AR 1.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Act through March 31, 2020. AR 15. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date of June 13, 2014 but, because Plaintiff had at least one 12-month period where she engaged in no substantial gainful activity, the ALJ proceeded to step two. AR 17-18. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: persistent depressive disorder; major depressive disorder; attention deficit hyper activity disorder; panic disorder; agoraphobia, generalized anxiety disorder; social phobia; post-traumatic stress disorder; avoidant personality disorder; dependent personality disorder; social anxiety disorder; and cannabis use disorder. AR 18. At step three, the ALJ found that none of Plaintiff's mental impairments met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18-19. The ALJ then determined Plaintiff's RFC and found that Plaintiff could perform:

> a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to understanding and carrying out simple instructions. Additionally, she is limited to no more than occasional contact with the public, co-workers and supervisors.

AR 19. At step four, the ALJ found that Plaintiff could not perform her past relevant work as a data entry clerk or user support analyst. The ALJ found at step five, however, that Plaintiff could perform other jobs existing in the national economy, including laundry sorter, inspector and hand packager, and garment sorter. AR 23. The ALJ thus found that Plaintiff was not disabled under the Act. AR 24.

## DISCUSSION

Plaintiff argues that the ALJ erred in three respects. First, Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony. Second, Plaintiff argues that the ALJ improperly rejected the other medical source statements of Erik Morris, Plaintiff's psychiatric mental health nurse practitioner. Finally, Plaintiff argues that the ALJ erred in rejected the lay witness testimony of Michelle M., Elizabeth B., and May T.[2] The Court addresses each alleged error in turn.

### A. Plaintiff's Subjective Symptom Testimony

#### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step

---

[2] *See supra* n.1.

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

## 2. Plaintiff's Symptom Testimony

At the September 28, 2018 hearing, Plaintiff testified her anxiety and inability to be around other people caused her to miss much work. AR 40-41. Plaintiff described suffering panic attacks that impaired her ability to think and move. AR 41. The panic attacks, Plaintiff testified, occurred seemingly randomly but were more likely to occur if she was around other people. *Id.* Plaintiff testified that she currently has "a panic attack" every day and that those attacks last anywhere from 20 minutes to six hours. AR 42. Plaintiff testified that she rarely leaves her house. AR 43. She appeared at the hearing with a stuffed animal to ameliorate her anxiety and was visibly rocking back and forth from anxiety during her testimony. AR 43. Still, Plaintiff also testified that she "frequently go[es] to a restaurant with friends" and "infrequently go[es] to someone else's house to . . . hang out." AR 44.

In her 2016 written submissions, Plaintiff also discussed suffering PTSD, including near-daily intense flashbacks that cause her "to be unable to do anything." AR 211. Plaintiff's PTSD caused her to struggle to fall asleep and suffer nightmares when she does sleep. AR 211, 232. She also further described how her panic attacks and anxiety impair her abilities. Plaintiff reported that her anxiety reduces her appetite and that she needs to be reminded to eat. AR 233. Because of her panic attacks, Plaintiff does not drive but she does go to the grocery store with her partner for about an hour every two weeks. AR 234. Plaintiff reported that, when her anxiety is not severe, she enjoys baking, playing games, hiking, and gardening. AR 232, 235.

## 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence in the record[.]" AR 20. The ALJ highlighted several inconsistencies between Plaintiff's symptom testimony and her description of her symptoms to medical providers.

An ALJ may reject a claimant's symptom testimony if the claimant's testimony is *contradicted* by evidence in the medical record. *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008). An ALJ may also *consider* the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins*, 261 F.3d at 857. The ALJ may not, however, reject subjective pain testimony solely because the objective medical record did not fully corroborate the testimony. *Robbins*, 466 F.3d at 883; *see also Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). The ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592).

The ALJ pointed to specific portions of the medical record where Plaintiff's *own statements* conflicted with Plaintiff's symptom testimony. For example, although Plaintiff testified that she suffered intense anxiety, in both August 2016 and December 2017, Plaintiff told psychiatrists that she was "spending more time with people and had lower levels of anxiety." AR 21; *see also* AR 331, 570. The ALJ also noted that Plaintiff reported attending the county

fair without incident in July 2018. AR 610. Similarly, although Plaintiff testified that her panic attacks were her most severe problem, in an August 2017 psychiatric evaluation, Plaintiff reported that anxiety was her most severe problem and rated it as only a three or four out of ten in severity. AR 21; *see also* AR 425. Finally, although Plaintiff testified that she suffered near-daily disabling panic attacks, just a few months earlier she reported suffering a "bad" panic attack only once per month. AR 21; *see also* AR 491. These conflicts between what Plaintiff told medical providers and what she told the Commissioner are exactly the type of inconsistencies on which an ALJ may rely to reject a Plaintiff's symptom testimony. *See Carmickle*, 533 F.3d at 1161.

Plaintiff argues that the ALJ did not identify what testimony the ALJ found inconsistent with the treatment record. Although the ALJ could have more explicitly linked the testimony the ALJ found inconsistent with the medical records, the Court disagrees that the ALJ erred. The ALJ was required to specifically identify what evidence contradicted what testimony. *See Treichler*, 775 F.3d at 1103. Here, the ALJ *identified* the testimony from Plaintiff that the ALJ found inconsistent with the record, *see* AR 20 (describing Plaintiff's testimony about her panic attacks), and in the next paragraph the ALJ *identified* specific statements by Plaintiff in the record that contradicted Plaintiff's testimony, *see* AR 21 (pointing to specific statements by Plaintiff to medical providers contradicting Plaintiff's testimony).

Plaintiff also argues that the ALJ "cherry-picked" the medical records to focus on improvements. The ALJ did not, however, reject Plaintiff's symptom testimony because the medical record demonstrated improvement. The ALJ rejected Plaintiff's symptom testimony because that testimony conflicted with Plaintiff's *own statements* about her symptoms to medical

providers. Whether the objective medical records reflect that Plaintiff's condition has improved is not relevant to the ALJ's treatment of Plaintiff's symptom testimony.

B. "Other" Medical Source Opinion

The ALJ gave "some weight" to the opinion of Plaintiff's treating therapist, Erik Morris, as expressed in Morris's written answers to questions posed by Plaintiff's counsel. Morris opined that Plaintiff "would be unlikely to be able to maintain long term full time gainful employment" because Plaintiff reported that she "is not good at being social with people." AR 643. The ALJ noted that some of Morris's opinions "agree[d] with the [RFC]." AR 22. The ALJ rejected Morris's opinion that Plaintiff is "unable to work," however, because the ALJ believed Morris's opinion represented a determination of "the ultimate issue of disability." AR 21.

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings ("SSRs") relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[4] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued her opinion after

---

[4] Among things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

March 27, 2017, the revised version of 20 C.F.R. §§ 404.1527 and 416.927 governs Plaintiff's claim.

These revised regulations incorporate the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Morris is a therapist, he is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). In evaluating "other" source testimony, the error is harmless, for example, when the opinion is inconsistent with a medical source opinion, particularly one that specializes in the field, and is "therefore entitled to greater weight." *Id.* at 1112. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff argues that the ALJ erred by rejecting Morris's opinion that Plaintiff would be unable to maintain long-term full-time employment on the basis that Morris's statement represented an opinion on the ultimate question of disability. The Court agrees. In *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012), the Ninth Circuit rejected this rationale for denying a similar statement from a medical source. 698 F.3d at 1160. There, the ALJ ignored a doctor's opinion that the plaintiff's "likelihood of sustained full time competitive employment unlikely." *Id.* The Commissioner argued that the ALJ's failure to address the doctor's statement was harmless because the doctor's opinion represented a conclusion on the ultimate issue of disability. *Id.* The

Ninth Circuit disagreed, holding that the doctor's statement did not represent a conclusion on the plaintiff's disability but was an assessment of the plaintiff's "*likelihood* of being able to sustain full time employment given the many medical and mental impairments [the plaintiff] faces." *Id.*

Morris's statement is nearly identical to the doctor's statement in *Hill*. *Compare* AR 643 ("[T]his individual at this time would be unlikely to be able to maintain long term full time gainful employment.") *with Hill*, 698 F.3d at 1160 ("[The plaintiff's] 'combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely.'"). The ALJ therefore erred by rejecting Morris's statement for this reason.

For two reasons, however, the ALJ's error was harmless. First, the ALJ's reason for rejecting Plaintiff's symptom testimony—that Plaintiff's statements to medical providers contradicted Plaintiff's testimony—is also a reason to discredit Morris's opinion. *See Molina*, 674 F.3d at 1122. As the Commissioner notes, Morris's opinion rests on Plaintiff's self-reports about her symptoms. Indeed, Morris explicitly tied his opinion that Plaintiff was unlikely to maintain employment to Plaintiff's own description of her impairments. *See* AR 643 ("[T]his individual at this time would be unlikely to be able to maintain long term full time gainful employment. [The following] *is what she revealed to me* on our initial assessment 1 year ago . . . ."). Plaintiff told Morris that she has "anxiety and [is] not good at being social with people . . . so [she does not] really fit in." *Id.* The ALJ rejected similar testimony from Plaintiff about the severity of Plaintiff's impairments because Plaintiff's own statements to medical providers contradicted that testimony. Plaintiff's statements to medical providers therefore also contradict her statements to Morris that resemble her symptom testimony. Because Morris's opinion rests on statements by Plaintiff like those the ALJ has already rejected, it was harmless error for the ALJ to reject Morris's opinion.

The ALJ's erroneous rejection of Morris's opinion is also harmless because Morris's opinion is contradicted by medical source opinions. *See Molina*, 674 F.3d at 1112. Morris opined that Plaintiff was "unlikely to maintain long term full time gainful employment." AR 643. Two medical source opinions contradict Morris's opinion. *See* AR 51-63 (state-agency reviewing psychologist Susan South, Ph. D., finding that Plaintiff is not disabled at initial-review stage); AR 64-76 (same); AR 79-91 (state-agency psychologist Winifred Ju, Ph. D., finding that Plaintiff is not disabled at reconsideration stage); AR 92-104 (same). Because Morris's opinion is inconsistent with the opinions of Dr. South and Dr. Ju, who are medical source opinions and who specialize in Morris's field, it was harmless error for the ALJ to reject Morris's opinion. *Molina*, 674 F.3d at 1112.

## C. Lay Witness Statements

The ALJ considered the lay witness testimony of Plaintiff's partners and friends, Michelle M., May T., and Elizabeth B., but appeared to give that testimony little weight, explaining that the testimony "do[es] not establish that [Plaintiff's] impairments are disabling" and "the accuracy of the conclusions made by third-party sources is questionable" because Plaintiff's friends and family "cannot be considered . . . disinterested." AR 22. Plaintiff argues that the ALJ's treatment of the lay witness testimony was improper. The Commissioner does not disagree but argues that the ALJ's error was harmless.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting

testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.").

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff is correct that the ALJ improperly rejected the lay witness testimony. *See Diedrich*, 874 F.3d at 640 ("[The lay witness]'s close relationship with Diedrich is not germane reason to discount the weight of [the lay witness's] observations."); *Laborin v. Berryhill*, 867

F.3d 1151, 1153 (9th Cir. 2017) ("The ALJ must consider both the medical evidence and

'descriptions and observations of [the claimant's] limitations from [the claimant's]

impairments(s), including limitations that result from [the claimant's] symptoms, such as pain,

provided by' the claimant, *family, friends*, and other people." (emphasis added)).

The ALJ's improper treatment of the lay witness testimony, however, was harmless. The

lay witness testimony did not describe any limitations not also described by Plaintiff. *See*

*Molina*, 674 F.3d at 1117. Plaintiff describes the lay witness testimony as follows:

> The lay witnesses described observing intense anxiety, flashbacks,
> and reclusive/isolating behaviors. Tr. 223-30, 296-97, 299, 300-01.
> Kiran used movies and computer games to distract and calm
> herself. Tr. 224. She had nightmares. Tr. 224. She needed
> reminders to eat. Tr. 225. She did not drive. Tr. 226. She rarely left
> home, avoided other people, panicked when in public, was easily
> overwhelmed, and often canceled plans. Tr. 227, 300-01, 296-97,
> 299. She sometimes had difficulty even caring for her own
> personal hygiene. Tr. 300, 299.

Pl.'s Br. (ECF 16) at 20. Plaintiff testified to these same limitations. *See* AR 40-41 (Plaintiff

suffers intense anxiety); AR 211 (Plaintiff suffers PTSD and flashbacks); AR 44 (Plaintiff

distracts herself from anxious thoughts by playing video games); AR 43 (Plaintiff watches TV to

distract herself from anxious thoughts); AR 211, 232 (Plaintiff has nightmares); AR 233

(Plaintiff needs reminders to eat); AR 234 (Plaintiff does not drive); AR 43 (Plaintiff rarely

leaves home and does not like to be around people); AR 233 (Plaintiff finds it stressful to shower

if housemates are in bathroom). As explained above, Plaintiff's own statements to medical

providers contradict Plaintiff's descriptions of her impairments. For the same reasons, Plaintiff's

own statements to medical providers contradict the similar lay witness testimony. Thus, the

ALJ's erroneous rejection of the lay witness testimony was harmless. *See Molina*, 674 F.3d

at 1117.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge